*In re* APPLICATION OF MICHIGAN CONSOLIDATED
GAS COMPANY

Docket No. 275663. Submitted October 8, 2008, at Grand Rapids.
Decided October 14, 2008. Approved for publication December 2,
2008, at 9:05 a.m.

Michigan Consolidated Gas Company (MichCon) filed an application in
the Public Service Commission (PSC) seeking, in part, to add uncollectible expense true-up mechanism (UETM) surcharges to the rates
it charges customers for natural gas. Under the UETM, the PSC
estimates an amount of uncollectible expense to include in setting
MichCon's rates for a calendar year. After the calendar year ends, the
actual uncollectible expense for the year and the projected amount
are compared and, if the actual amount exceeds the estimate, UETM
surcharges will be imposed on ratepayers in an attempt to collect 90
percent of the difference from the ratepayers. If the actual amount is
less than the estimate, credits are applied in an attempt to return 90
percent of the difference to the ratepayers. The PSC adopted the
UETM in an order granting rate relief to MichCon in 2005. The
actual uncollectible expense from May 2005 to December 2005
exceeded the estimate and, as a result, the PSC approved MichCon's
request for UETM surcharges to its rates for 2007 in an order dated
December 21, 2006. The Attorney General appealed, contending that
the UETM is unlawful because it is not within the scope of the PSC's
statutory authority and is an impermissible retroactive ratemaking
mechanism.

The Court of Appeals *held*:

The PSC acted within its general ratemaking powers in adopting
the UETM to ensure that the portion of the rates attributable to
uncollectible expense would substantially match actual uncollectible
expense. The UETM does not involve retroactive ratemaking because
the deferred expense is deemed an expense of the year to which it is
deferred and, thus, is recovered on a prospective basis.

Affirmed.

PUBLIC UTILITIES — PUBLIC SERVICE COMMISSION — RATEMAKING AUTHORITY.

The Public Service Commission may, within its general ratemaking
powers, adopt a ratemaking formula that includes an equalization

mechanism designed to ensure, to the extent possible, that the amount of a public utility's uncollectible expense attributable to unpaid ratepayers' utility bills for a calendar year matches the amount estimated by the Public Service Commission in setting the rates for that year; an equalization mechanism that defers the excess expense to a future year and that deems such expense to be an expense of the year to which it is deferred collects such expense on a prospective, not a retroactive, basis and is not retroactive ratemaking.

*Michael A. Cox*, Attorney General, and *Susan I. Leffler* and *Michael E. Moody*, Assistant Attorneys General, for the Attorney General.

*Michael A. Cox*, Attorney General, *B. Eric Restuccia*, Solicitor General, and *Steven D. Hughey* and *Kristin M. Smith*, Assistant Attorneys General, for the Public Service Commission.

*Bruce R. Maters* and *Michael J. Solo*, and *Fahey Schultz Burzych Rhodes PLC* (by *Stephen J. Rhodes* and *William K. Fahey*) for Michigan Consolidated Gas Company.

Before: Markey, P.J., and Sawyer and Kelly, JJ.

Per Curiam. The Attorney General appeals as of right the December 21, 2006, order of the Public Service Commission (PSC) authorizing Michigan Consolidated Gas Company (MichCon) to add uncollectible expense true-up mechanism (UETM) surcharges to the rates it charged customers for natural gas. We affirm.

The PSC adopted the UETM in an April 28, 2005, order in this case granting rate relief to MichCon. The basic framework of that mechanism is as follows. The PSC estimates an amount of "uncollectible expense"[1] to

---

[1] Uncollectible expense essentially refers to the amount of unpaid utility bills remaining after MichCon has exhausted its collection efforts with regard to ratepayers unable or unwilling to fully pay those bills.

include in setting MichCon's rates for a calendar year. After that calendar year has ended, the actual uncollectible expense for the year is determined and compared with the projection. If the actual uncollectible expense exceeds the estimate, UETM surcharges will be imposed on ratepayers to attempt to collect 90 percent of the difference between the actual and the estimated uncollectible expense. Conversely, if the actual expense is less than estimated, credits will be applied to attempt to return 90 percent of the difference.[2] However, for the initial period in 2005 underlying this case, only the actual and the estimated uncollectible expenses from May to December were considered. The actual uncollectible expense for that period exceeded the estimated expense included in MichCon's rates. As a result, the PSC approved MichCon's request for surcharges to its rates for 2007 in the December 21, 2006, order being appealed.

The Attorney General argues that the UETM is unlawful because it is not within the scope of the PSC's statutory authority and constitutes an impermissible retroactive ratemaking mechanism. We disagree.

Under MCL 462.25, rates prescribed by the PSC are presumed to be lawful and reasonable. *In re Application of Detroit Edison Co*, 276 Mich App 216, 224; 740 NW2d 685 (2007). A party aggrieved by a PSC order has the burden of proving by clear and satisfactory evidence that the order is unlawful or unreasonable. *Id.* To establish the unlawfulness of a PSC order, the appellant must show that the PSC failed to follow a mandatory statute or abused its discretion in exercising its judgment. *Id.* An order is unreasonable if it is unsupported

---

[2] The rationale for using 90 percent of the difference is to give MichCon an incentive to maximize its collection efforts to reduce its uncollectible expense.

by the evidence. *Id.* Further, the PSC "has broad ratemaking authority" and "is not bound by any single ratemaking formula, and may make pragmatic adjustments when warranted by the circumstances of the particular matter before it." *Id.* at 243. A rate-design decision should not be disturbed absent a showing that it is "arbitrary, capricious, or an abuse of discretion." *Id.*

This Court's opinion in *In re Application of Consumers Energy Co*, 279 Mich App 180; 756 NW2d 253 (2008), approved for publication on May 27, 2008, after the filing of all the briefs on appeal in this case, requires the rejection of the Attorney General's position that the UETM was outside the PSC's statutory authority and violated the rule against retroactive ratemaking. In that case the Attorney General contended, paralleling its contention regarding the UETM, that an "equalization mechanism" for pension and other post-employment benefits was improper as outside the PSC's authority and as constituting improper retroactive ratemaking. *Id.* at 182, 194. In its relevant aspects, the UETM at issue in this case parallels the equalization mechanism at issue in *Consumers Energy Co.* Specifically, both mechanisms involve the inclusion of an initial projection of the relevant expense (uncollectible expense in this case and pension and other post-employment expenses in *Consumers Energy Co*) in regulated rates with the actual such expense later being compared with that initial amount and a difference between the two rates being deferred for future recovery. See *id.* at 194.

This Court rejected the challenge to the equalization mechanism in *Consumers Energy Co*, stating:

> The Attorney General asserts that approval of this equalization mechanism constituted prohibited retroactive

ratemaking. The PSC concluded that pursuant to its general ratemaking powers it was authorized to adopt a ratemaking formula that included this equalization mechanism, which was designed to ensure, to the extent possible, that rates would match expenses. We note that the rate is presumed, prima facie, to be lawful and reasonable. *In re Detroit Edison Application, supra* at 224. The Attorney General has failed to overcome this presumption. In *Attorney General v Pub Service Comm,* 262 Mich App 649, 656; 686 NW2d 804 (2004), this Court held that deferred expenses were an expense of the year to which they were deferred, and were therefore prospective. Specifically, this Court noted, " 'when capitalized expenditures are amortized, the amortization becomes a current expense even though it reflects expenditures that were capitalized in the past.' " *Id.,* quoting *Ass'n of Businesses Advocating Tariff Equity v Pub Service Comm,* 208 Mich 248, 261; 527 NW2d 533 (1994). There is no sound basis for distinguishing the equalization mechanism approved by the PSC in this case from deferred expenses affirmed in prior caselaw. Accordingly, the deferral of pension and other post-employment benefit expenses to a subsequent year did not constitute retroactive ratemaking. [*Consumers Energy Co, supra* at 194.]

Applying this template to the present case, as with the equalization mechanism in *Consumers Energy Co,* the PSC acted within its general ratemaking powers in adopting the UETM to ensure that the portion of rates attributable to uncollectible expense would substantially match actual uncollectible expense. Further, the UETM, designed to defer 90 percent of the difference between the initially projected and the actual uncollectible expenses for a given period to a future year, does not involve retroactive ratemaking because the deferred expense is deemed an expense of the year to which it is deferred and, thus, is recovered on a prospective basis. Particularly, under the rationale of *Consumers Energy Co,* the 2005 uncollectible expense de-

ferred to 2007 under the order being appealed is a 2007 expense collected on a prospective, not retroactive, basis in 2007.

In light of our resolution of the merits of the substantive issue presented by the Attorney General, we need not consider whether the PSC erred by considering the Attorney General's arguments barred as untimely.

Affirmed.